J-A12024-22
J-A12025-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| O.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.W.B | : | |
| | : | |
| Appellant | : | No. 1365 WDA 2021 |

Appeal from the Order Entered November 18, 2021
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD 16-007751

| O.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.W.B. | : | |
| | : | |
| Appellant | : | No. 1391 WDA 2021 |

Appeal from the Order Entered November 18, 2021
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD 16-7751-008

BEFORE: MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED: JUNE 21, 2022**

_____

[*] Retired Senior Judge assigned to the Superior Court.

C.W.B. ("Father")[1] appeals *pro se* from the custody order dated November 8, 2021, and entered November 18, 2021, that modified the existing August 2, 2017, custody order with respect to his son with O.B. ("Mother"), J.B. ("Child" or "the Child"), born in 2008. Father additionally appeals from a separate order, also dated November 8, 2021, and entered November 18, 2021,[2] after remand, finding him in contempt of the August 2017 custody order.[3, 4] While Father's appeals were not consolidated, as the

_____

[1] Pursuant to order dated February 18, 2022, Father's request for the use of initials was granted and the Prothonotary of this Court was directed to redact the caption without prejudice for the panel to unredact. Given Father's request, we maintain redaction. **See** Pa.R.A.P. 904(b)(2); Pa.R.A.P. 907(a).

[2] The subject orders were dated November 8, 2021. However, notice pursuant to Pa.R.Civ.P. 236(b) was not provided until November 18, 2021. Our appellate rules designate the date of entry of an order as "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)." Pa.R.A.P. 108(b). Further, our Supreme Court has held that "an order is not appealable until it is entered on the docket with the required notation that appropriate notice has been given." **Frazier v. City of Philadelphia**, 735 A.2d 113, 115 (Pa. 1999).

[3] By order dated November 10, 2021, and entered November 18, 2021, this order was amended to correct a typographical error as to the amount of money expended by Mother as a result of Father's contemptuous actions. Despite this correction, the amended order references the incorrect order date of October 26, 2021.

[4] In his notice of appeal, Father purported to appeal from separate orders, "decisions," and "statements" of the trial court. **See** Appellant's "I. Notice of Appeal; II. [Pa.R.A.P.] 1925(b) Statement of errors," 11/21/21, at 4-8. Following this Court's issuance of rules to show cause and Father's responses thereto, this Court issued an order clarifying that his appeal at 1365 EDA 2021 stemmed from the November 8, 2021, custody order and his appeal docketed at 1391 EDA 2021 stemmed from the November 8, 2021, contempt order.

trial court and the parties addressed them together, we dispose of them together in one memorandum. After review, we affirm.

This case has a lengthy and tortuous history involving litigation in both state and federal court here in Pennsylvania, as well as in Germany, related to custody of Child. Significantly, the extensive litigation also includes numerous appeals in all forums. The factual background and procedural history as set forth in this Court's Memorandum filed on December 2020 is as follows:

> Father is a U.S. citizen who resides in Germany. Mother, a citizen of Ukraine, resides in Pittsburgh, Pennsylvania, as a lawful permanent resident. The parties married in Ukraine in 2008. The family resided in Ukraine and Ireland during the first three years of [Child]'s life. In 2011, Mother and [Child] moved to Pittsburgh after Mother was accepted into a Ph.D. program there, while Father took a position in Germany. Father joined Mother and [Child] in Pittsburgh in 2013, then the family relocated to Germany. In 2015, Mother and [Child] returned to Pittsburgh. Father has maintained that the parties had agreed to alternate custody, with [Child] attending school one year in Pittsburgh, then the next in Germany, and so on. Mother disclaims reaching any such agreement.
>
> In 2016, Mother filed a complaint for divorce and a complaint for custody. The court entered an interim order granting primary custody to Mother during the school year and to Father during summer break. The orderly progression of the custody proceedings, in which Father was permitted to participate via telephone, was interrupted by Father's unsuccessful litigation in federal court of a claim for the return of [Child] to Germany pursuant to the Hague Convention. Ultimately, a trial was

_____

Further, this Court dismissed this appeal docketed at 1392 EDA 2021 as duplicative.

conducted, and a final custody order entered on August 2, 2017. Therein, the court awarded primary physical custody to Mother in Pittsburgh, with Father enjoying physical custody in Germany during the summer and holidays and the right to additional time in Pittsburgh if he chose to avail himself of it. The parties shared legal custody but for regarding educational matters, for which Mother was awarded decision-making authority. Father's appeal from the 2017 custody order resulted in no relief. *See O.B. v. C.W.B.*, 190 A.3d 731 (Pa. Super. 2018) (unpublished memorandum).

In 2018, Father moved to modify custody, and a trial was scheduled, however, it was superseded by a hearing on allegations of contempt against Father. Father also moved for the trial court to recuse itself in December 2018 and January 2019, but the trial court declined. Father filed another motion to modify custody in January 2019, and a judicial custody conciliation was scheduled for September 26, 2019. In the meantime, [Child] spent the summer of 2019 with Father in Germany pursuant to the terms of the 2017 custody order.

[Child] was to return to Pittsburgh on August 19, 2019, one week before school began. Instead, Father enrolled [Child] in school in Germany and refused to allow him to go back to Pittsburgh. On August 22, 2019, Mother presented a motion for contempt and for immediate return of [Child]. Father participated in the motion hearing via telephone and indicated that [Child] refused to go back to Pittsburgh. The trial court advised Father that it was his legal responsibility to comply with the controlling custody order, and that it would schedule a hearing on the contempt petition.

In accordance with its intentions stated at the hearing, the trial court entered orders on August 29, 2019, (1) requiring Father to immediately send [Child] back to Pittsburgh via airplane as he had in the past, and (2) scheduling a hearing on the contempt allegations for October 20, 2019. "The scheduling order [wa]s docketed at Document 170 on the trial court docket and was emailed to Father, the notification method he requested be implemented and which has been used throughout the pendency of this case." The order further specified that "Father may arrange to testify by telephone as he has before." The custody conciliation scheduled for September 26, 2019, in connection with Father's 2019 modification motion did not take place while [Child] remained in Germany.

- 4 -

Father did not appear at the October 10, 2019 contempt hearing by telephone or in person. The trial court proceeded without him. The following day, [an order] was entered, indicating that Father was in contempt of the 2017 custody order by failing to return [Child] on August 19, 2019, and also for unilaterally enrolling [Child] in school in Germany when Mother has full legal authority on educational matters, and awarding Mother counsel fees. The order further provided that the court would schedule a hearing on custody modification "upon praecipe of either party when the child is returned to Pittsburgh."

*O.B. v. C.W.B.*, 1677 WDA 2019 (Pa. Super. Dec. 8, 2020) (unpub. memo. at 1-5) (some citations to the record omitted) (footnotes omitted).

Father appealed from the October 2019 order of contempt. By memorandum of December 8, 2020, a panel of this Court vacated the order and remanded for a new contempt hearing due to "defects as to notice, the sufficiency of the evidence, and the completeness of the record." *O.B.*, 1677 WDA 2019, at 12.

Moreover, as Child continued to remain in Germany, Mother instituted legal proceedings in Germany. N.T., 2/1/21, at 5. By order dated December 6, 2019, the German appellate court required Father to return Child to Mother. *Id.* at 6. Mother traveled to Germany and met Father and Child at the airport but was unsuccessful in securing Child's return to Pittsburgh. *Id.* at 8-9. Mother then sought enforcement of the order in the German court, and Father ultimately traveled with Child to Pittsburgh on January 14, 2020. N.T., 2/1/21, at 11; N.T., 7/12/21, at 120-27.

Upon remand, the trial court conducted hearings on February 1, 2021, July 12, 2021, and October 21, 2021.[5] Mother and Father each appeared *pro se* and each testified on their own behalf. Father presented the testimony of Anita Marie Schuppan and Kim Price, friends present at the airport in Germany as a "silent witnesses;"[6] as well as Tony McGroarty, Psy.D., who conducted psychological evaluations. The court further received testimony from Child's guardian ad litem ("GAL"), Meri Ianetti, Esquire.[7] Lastly, the court interviewed Child in the presence of the GAL.[8]

---

[5] Specifically, the court addressed the remanded contempt hearing on February 1, 2021, and July 12, 2021. It then proceeded to address Father's petition to modify, consolidated by order of February 12, 2021, on July 12, 2021, and October 21, 2021. While the court noted that it had concluded the hearing with respect to contempt on July 12, 2021, **see** N.T., 7/12/21, at 194, we observe that some of the remaining testimony and evidence related to contempt.

[6] Father testified that, in December 2019, he brought Schuppan, her husband, and Price to the airport, where Mother, as noted **supra**, had flown to pick up Child after an order was entered in Germany for Child's return. N.T., 7/12/21, at 99-101.

[7] Pursuant to order dated February 12, 2021, the court provided that Father may utilize a GAL. The court then appointed Attorney Ianetti per order of February 18, 2021. While noted on the transcript as Father's witness, Attorney Ianetti would perhaps more appropriately be classified as the court's witness. **See** N.T., 7/12/21, at 284-86.

[8] This interview occurred at the commencement of the hearing on July 12, 2021. Father presented proposed questions to the court and, after hearing from the GAL, the court stated, "I'm looking at those questions and I'll incorporate ones that I thought were appropriate." N.T., 7/12/21, at 3-5.

By order dated November 8, 2021, and entered November 18, 2021, the court found Father in contempt of its August 2, 2017, custody order through his refusal to return Child to Mother in August 2019. The court further found Father in contempt for enrolling Child in school. The court determined that Mother expended $3,483.14[9] in enforcement of custody orders, which Father was to repay within 30 days, and that Father was responsible for all future costs related to the enforcement of court orders.

By order dated November 8, 2021, and entered November 18, 2021, the court maintained shared legal custody, except for educational decisions, which remained with Mother. As for physical custody, the court maintained primary physical custody with Mother. The court awarded Father partial physical custody each summer from one week after the last day of school until one week before school commences. Father was additionally to receive overnight custodial time during the school year should he travel to Pittsburgh. Among other things, the court further set forth a holiday and vacation schedule. Notably, the court established conditions precedent that Father must repay Mother sums owed under the contempt order prior to the exercise of any custodial period pursuant to the order. Additionally, the court required Father to post a bond of $20,000.00 prior to the exercise of any custodial period in Germany. Along with the order, the trial court likewise addressed

---

[9] By order dated November 10, 2021, the court amended this amount to $8,483.14.

each of the mandatory best interest factors set forth in Section 5328(a) of the Child Custody Act ("the Act"), 23 Pa.C.S. §§ 5321-5340. *See* Discussion of 23 Pa.C.S. [§] 5328 Custody Factors. Of significance to the trial court's determination was Father's withholding of Child in 2019 and Child's need for stability. *Id.* at 1-3.

On November 15, 2021, and November 21, 2021, Father filed timely notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), wherein Father raises 54 errors by the trial court. The court then issued an Opinion dated December 29, 2021, and filed December 30, 2021, in which it concluded as follows:

> Father retained Child in Germany in violation of the parties' 2017 Custody Order. The evidence presented does nothing to convince me that this was not a volitional act on Father's part. This justifies my finding that Father was in contempt. . . . I carefully weighed the statutory custody factors and determined the custody scheme which I felt to be in this Child's best interest based on all of the evidence presented. . . .

Trial Ct. Op., 12/30/21, at 11.

On appeal, Father raises the following issues for our review:

CONTEMPT

1. Did the trial court breach my due process rights, abuse its discretion, and/or err as a matter of law by refusing to allow me to interview and cross-examine witnesses and refusing to ask prepared questions of the [Child]?

2. Did Superior Court's remand of [December 8, 2020] (1677-WDA-2019) prejudice the case for contempt by stating that I am "guilty of noncompliance?"

3. Did the trial court make an error of law or abuse of discretion in determining the [Child]'s failure to return to Pittsburgh on

[August 19, 2019] was due to a willful or volitional act and/or that there was wrongful intent?

4. Was the trial court's order "definite clear and specific" in a manner that supports a contempt finding with regard to [Child]'s failure to return to Pittsburgh?

5. Is the contempt finding in regard to [Child]'s failure to return to Pittsburgh supported by competent evidence of record?

6. Did the trial court abuse its discretion, make an error of law, and/or breach due process by assessing contempt regarding [Child]'s attendance at a German class by raising the issue itself?

7. Did the trial court committed an error of law and/or abuse of discretion by turning the civil contempt proceedings into criminal contempt proceedings [*sua sponte*], without giving notice, and/or without informing me of my rights, [*e.g.*] against self-incrimination; [*e.g.*] p. p. 145-146 of TR-1 February 2021.

8. Did the trial court abuse its discretion, make an error of law, and/or breach due process by determining that I willfully, and with wrongful intent, unilaterally decided to enroll [Child] in a school without [Mother]'s consent to the correct legal standard of proof?

CUSTODY

9. Did the trial court abuse its discretion, make an error of law, and/or breach due process rights and/or equal protection rights by [*sua sponte*] changing or modifying the 2017 custody order without notice, without providing an opportunity to be heard, and/or without assessing the best interests of [Child]?

10. Did the trial court abuse its discretion, make an error of law, and/or breach first amendment rights by ordering restriction of speech in the [*sua sponte*] changes/modifications of the 2017 custody order?

11. Did the trial court abuse its discretion, make an error of law, and/or breach due process and/or equal protection rights in refusing to appoint an attorney for [Child] to represent his legal interests?

12. Did the trial court breach [Child]'s inherent rights of section 1 of the PA Constitution?

13. Did the trial court abuse its discretion, make an error of law, and/or breach due process by using hearsay and/or the GAL's opinion to assess and/or determine of the weight of factor 5328(a)(7); . . . custody order, p. 2, "the court relies on the report of the GAL in this matter?"

14. Did the trial court abuse its discretion, make an error of law, and/or breach due process by showing bias during the interview of [Child]?

15. Did the trial court abuse its discretion and/or make an error of law by refusing to ask prepared questions of [Child]?

16. Did the trial court made an error of law or an abuse of discretion by failing to follow the law that, in this case, the preference of [Child]is determinative of best interests; [*see*] TR-12 July 2021 pp.331-334?

17. Did the trial court abuse its discretion, err as a matter of law, and/or breach due process by refusing to order my opponent to test the water for lead?

18. Did the trial court abuse its discretion, err as a matter of law, and/or breach due process by failing to consider giving weighted consideration to factors which affect the safety of [C]hild, such as the relative prevalence of gun violence, opiate addiction, lead in the drinking water, and/or the political instability of the failed January 6, 2021 putsch?

19. Did the trial court abuse its discretion, err as a matter of law, and/or breach due process by refusing to order cooperation for making the JFK School application?

20. Did the trial court capriciously ignore evidence of the agreement of the parents for [C]hild's return to Berlin and/or deny me an opportunity to be heard?

21. Did the trial court make an error of law or abuse its discretion by failing to presume that the pre-dispute agreement by the fit parents, for [C]hild's return to Berlin, was in [C]hild's best interests?

22. Did the trial court make an error of law, abuse of discretion, and/or breach of due process by forbidding me from making legal arguments and/or refusing to address my arguments in the opinion?

23. Did the trial court capriciously ignore evidence of the availability of extended family and the significance [of C]hild's relationships with extended family?

24. Did the trial court abuse its discretion, make an error of law, and/or breach due process rights by refusing to timely calendar a custody modification trial?

25. Did the trial court abuse its discretion, err as a matter of law, and/or breach due process by failing, again, to assess the [Section] 5337(h) factors?

. . .

26. Did the trial court make an error of law or abuse its discretion by refusing to allow me to proceed with the exhibits as prepared for the 21 October 2021 hearing?

27. Did the trial court make an error of law, abuse its discretion, and/or deny due process by refusing to consider any nondeterminative evidence, [*i.e.*] probative evidence, thereby refusing to weigh evidence or factors?

28. Did the trial court make an error of law, abuse its discretion, and/or deny due process by refusing to allow me to take notes during cross-examination to aid in self-redirect?

29. Did the trial court abuse its discretion and/or make an error of law by appointing a [GAL] without finding that the appointment was necessary to assist the court in determining the best interests of [Child in the February 18, 2021, order]?

30. Did the trial court make an error of law, abuse its discretion, and/or breach due process by [*sua sponte*] appointment of the GAL, without notice, a hearing, or an opportunity to be heard [in the February 18, 2021, order]?

31. Did the trial court [make] an error of law or abuse[ ] its discretion by [*sua sponte*] ordering me to pay for all of the cost of the GAL without notice, a hearing, or an opportunity to be heard [in the February 18, 2021, order]?

32. Did the trial court abuse its discretion, make an error of law by modifying the custody order according to matters other than the best interest determination, [*i.e.*] matters strictly relevant only for the sanctions for contempt?

33. Did the trial court make an error of law, abuse its discretion, and/or deny due process by refusing recusal?

Father's Brief at 15-22.

In addressing the number of issues raised by Father in his Rule 1925(b)

Statement, the trial court indicated:

> Father's 1925(b) Statement . . . is neither coherent nor concise and is an attempt to overwhelm this court by the raising of a multitude of issues which cannot be raised in his brief or appropriately argued in the Superior Court. Additionally, I would note that this error can no longer be attributed to an innocent misunderstanding of the rules on Father's part as a [*pro se*] litigant. Despite his [*pro se*] status, this is not Father's first appellate adventure.
>
> Father's deliberate failure to set forth the material issues he seeks to raise on appeal in a concise manner impedes my ability to prepare an opinion addressing the issues he seeks to put before this [c]ourt, and thereby frustrates this [c]ourt's ability to engage in a meaningful and effective appellate review process.

Trial Ct. Op., 12/30/21, at 4.

As to Rule 1925(b) statements, in **Tucker v. R.M. Tours**, 939 A.2d 343,

346 (Pa. Super. 2007), this Court stated:

> Our law makes it clear that Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must be "concise" and coherent as to permit the trial court to understand the specific issues being raised on appeal. Specifically, this Court has held that when appellants raise an "outrageous" number of issues in their 1925(b) statement, the appellants have "deliberately circumvented the meaning and purpose of Rule 1925(b) and ha[ve] thereby effectively precluded appellate review of the issues [they] now seek to raise." [**Kanter v. Epstein**, 866 A.2d 394, 401 (Pa.Super. 2004), *appeal denied,* 584 Pa. 678, 880 A.2d 1239 (2005), *cert. denied,* **Spector, Gadon & Rosen, P.C. v. Kanter**, 546 U.S. 1092, (2006)]. We have further noted that such "voluminous" statements do not identify the issues that appellants actually intend to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) makes the raising of so

- 12 -

many issues impossible. ***Id.*** "Further, this type of extravagant 1925(b) statement makes it all but impossible for the trial court to provide a comprehensive analysis of the issues." ***Jones v. Jones***, 878 A.2d 86, 90 (Pa. Super. 2005).

***Tucker***, 939 A.2d at 346.

In the case *sub judice*, we observe that Father's Rule 1925(b) statement is ten pages in length and consists of 54 points of alleged trial court error. While we acknowledge Father narrowed his issues to the 33 he presents in his statement of questions involved and argument sections of his brief, this reduction is minimal. Clearly, this number of claims is obdurate and vexatious and does not allow for meaningful review, as stated by the trial court. ***See*** Trial Ct. Op., 12/30/21, at 4. As expressed by the court, "Father sees this case as one of himself versus the [c]ourt, a quest to beat the bench." ***Id.*** at 10. Illustrative of Father's intent, is the sheer quantity and frequency of filings, many raising multiple issues, as reflected on the trial court docket, as well as this Court's own docket. Further, during the hearing on October 21, 2021, before its conclusion and the court had even entered an order, Father stated, "Look, we all know how this is going to go down. We all know I'm going to appeal. . . ." N.T., 10/21/21, at 65. Raising such a staggering, burdensome, and unreasonable number of issues is in contravention to the purpose of Rule 1925(b) and only serves to frustrate appellate review.

Moreover, and relatedly, issue selection is a key hallmark of appellate advocacy. Our Supreme Court has explained that raising a staggering number of claims is not effective appellate advocacy and is "borderline abuse of the legal system." ***Commonwealth v. Robinson***, 864 A.2d 460, 479 n.28 (Pa.

2004). The Court stated that, "**multiplying assignments of error will dilute and weaken a good case** and will not save a bad one." *Id.* (emphasis in original) (quoting Robert H. Jackson, "Advocacy Before the United States Supreme Court," 25 Temple L. Q. 115, 119 (1951)).

In addition, Father's brief is deficient as follows. His statement of the case section is fifteen pages in length and, therefore, anything but "brief" or "condensed." *See* Pa.R.A.P. 2117(a)(1)-(2), (4)-(5). While providing a lengthy procedural history, it is largely devoid of the relevant factual history with appropriate reference to the record. *See* Pa.R.A.P. 2117(a)(4) (requiring, "A closely condensed chronological statement, in narrative form, of all the facts which are necessary to be known in order to determine the points in controversy, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found. . . .".). Further, as to the argument section, although Father frequently makes reference to numbers in brackets, which this Court infers is a reference to document numbers from the trial court docket, Father fails to make this clear at the outset of his brief and often times fails to further specify or offer any further detail as to what document he is referring. *See* Pa.R.A.P. 2119(c) ("If reference is made to the pleadings, evidence, charge, opinion or order, or any other matter appearing in the record, the argument must set forth, in immediate connection therewith, or in a footnote thereto, a reference to the place in the record where the matter referred to appears. . . ."). Similarly, Father makes bald statements as to his assessment of the evidence

without reference to the record. **See** Pa.R.A.P. 2119(d) ("When the finding of, or the refusal to find, a fact is argued, the argument must contain a synopsis of all the evidence on the point, with a reference to the place in the record where the evidence may be found."). He also fails to consistently and clearly identify where in the record he raised the issue in question before the trial court. **See** Pa.R.A.P. 2119(e) ("Where under the applicable law an issue is not reviewable on appeal unless raised or preserved below, the argument must set forth, in immediate connection therewith or in a footnote thereto, either a specific cross-reference to the page or pages of the statement of the case which set forth the information relating thereto as required by Pa.R.A.P. 2117(c), or substantially the same information.).

Moreover, the Rules limit a principal brief to 14,000 words, unless the brief does not exceed 30 pages. **See** Pa.R.A.P. 2135(a)(1). Where the brief exceeds 30 pages, a certificate of compliance with the 14,000 word-count limit must be filed. **Id.** Here, the substantive portion of Father's brief spans 81 pages. While Father filed a certificate of compliance with the word-count limit, given the shear length of his brief, it belies credulity and defies logic that his brief is less than 14,000 words as he certifies. Additionally, these matters were not consolidated, thereby requiring Father to file separate briefs; however, Father failed to file separate briefs and filed a single rambling, repetitive, and disjointed brief.

Pa.R.A.P. 2101 underscores the seriousness with which this Court takes deviations from procedural rules, as it permits us to quash or dismiss an

- 15 -

appeal for procedural noncompliance. *See* Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed, and, if the defects are in the brief or reproduced record of the appellant and are substantial, the appeal or other matter may be quashed or dismissed.").

Additionally, we cannot accord special relief to an appellant merely because of his *pro se* status. *See Commonwealth v. Maris*, 629 A.2d 1014, 1017 n. 1 (Pa. Super. 1993). As stated in *Commonwealth v. Rivera*, 685 A.2d 1011, 1013 (Pa. Super. 1996) (quoting *O'Neill v. Checker Motors Corp.*, 567 A.2d 680, 682 (Pa. Super. 1989)):

> While this court is willing to liberally construe materials filed by a *pro se* litigant, we note that appellant is not entitled to any particular advantage because she lacks legal training. As our [S]upreme [C]ourt has explained, any layperson choosing to represent [themslves] in a legal proceeding must, to some reasonable extent, assume the risk that [their] lack of expertise and legal training will prove [their] undoing.

*Rivera*, 685 A.2d at 1013 (citation and quotation marks omitted).

Father's actions limit our ability to dispose of all matters on appeal. Although we do not quash or dismiss Father's appeal, as a result of the impediments to our review, we consider only those issues that the trial court found capable of review. The court described such as issues as "those specific complaints legitimately arising from the contempt finding and the Custody

Order issued on November 8, 2021."[10]   Trial Ct. Op., 12/30/21, at 5.   We

review same pursuant to the following scope and standard of review and the

principles of law governing custody matters.

> In custody cases under the Act, our standard of review is as follows:
>
> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations.  In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand.  However, we are not bound by the trial court's deductions or inferences from its factual findings.  Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record.  We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (citation omitted); *see*

*also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015).

> This Court has consistently held:
>
> [T]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned.  Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

---

[10] We observe that the trial court specifically declined to review several issues as not appropriately before it, including those related to any agreement prior to the August 2017 custody order, the testing of Mother's water, and judicial notice as to opioid misuse and gun violence.  Trial Ct. Op., 12/30/21, at 3-4.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).  In addition,

> [a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order.  An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused.  An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child.  *See* 23 Pa.C.S. §§ 5328(a), 5338(a).  "The best interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing."  *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted).  Section 5328(a) sets forth the best interest factors that the trial court must consider in awarding custody.  *See E.D. v. M.P.*, 33 A.3d 73, 79-80 n.2 (Pa. Super. 2011).  Section 5328(a) of the Act provides as follows:

> **§ 5328.  Factors to consider when awarding custody**
>
> **(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one

another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

The trial court recognized the necessity of assessing all of the custody factors and explained its analysis as follows:

I am required to analyze and apply all of the statutory custody factors of 23 Pa.C.S. [§] 5328 to the facts of the cases before me. One single factor is not, as Father claims, determinative. In this case, Child has expressed a desire to see his Father and other family members in Europe, but he has also expressed the idea that he would miss his mother if he lived in Berlin with his Father. His wishes have changed from the previous trial when he preferred to remain with [] Mother and they may change again, now that he is in a new school and making new friends.

I respect Child's preferences and did not ignore them. But they are not as well reasoned and mature as Father contends. After visiting Father's extended family in Texas, Child declared that he wanted to live there. He stated that he would like to live in a house with a water slide. He is a young teen living through an incredibly contentious custody battle with his parents, both of whom he loves. He is swayed by his circumstances, by his relationship with friends, schools, and school activities. A child's wishes are but one of the factors which I must weigh in determining custody. They are not determinative nor, in this case, were they definite or unwavering.

My overarching goal, as it should be in all custody matters, is to craft a custody order which is in the best interest of the child. This standard requires a case-by-case assessment of all

- 20 -

the factors that may legitimately affect the well-being of the child. ***M.J.M. v. M.L.G.***, 63 A.3d 331, 334 (Pa. Super. 2013)

> I weighed all of the custody factors when determining which parent should have primary custody. In particular, I found that Father's unlawful retention of Child in Germany resulted in factor 1 weighing heavily in favor of Mother remaining the primary custodian. Nonetheless[,] I think it is vital that Child maintain a relationship with Father, who is afforded generous custody terms in my Order, should he choose to exercise them.

> Both parties were afforded the opportunity to address the custody factors. The factors which I found the most important, and hence were afforded the most weight, favored Mother, as I set forth in my Order.

Trial Ct. Op., 12/30/21, at 9-10.

With regard to the custody factors, we have stated that the trial court is required to consider all such factors. ***J.R.M. v. J.E.A.***, 33 A.3d 647, 652 (Pa. Super. 2011). While the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S. § 5328(a) and 23 Pa.C.S. § 5337(h), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. ***See***, 23 Pa.C.S. §§ 5328(a), 5337(h); ***see M.J.M. v. M.L.G.***, 63 A.3d 331, 338-39 (Pa. Super. 2013). Critically, as we stated in ***M.J.M.***:

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case**. ***See A.D. v. M.A.B.***, 989 A.2d 32, 35-36 (Pa. Super. 2010) ("In reviewing a custody order ... our role does not include making independent factual determinations. . . . In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*Id.* at 339 (emphasis added). Further, while a child's wishes are to be considered, such are not controlling. *McMillen v. McMillen*, 602 A.2d 845, 847 (Pa. 1992) (stating, "Although the express wishes of a child are not controlling in custody decisions, such wishes do constitute an important factor that must be carefully considered in determining the child's best interest.").

As stated above, in this case, the trial court adequately addressed each of the Section 5328(a) custody factors in an analysis submitted contemporaneously with its custody order. *See* Discussion of 23 Pa.C.S. [§] 5328 Custody Factors. We conclude the court carefully and thoroughly considered the child's best interests, and the evidence supports the court's custody decision. Accordingly, we affirm the custody order.[11]

---

[11] In connection with the custody order, Father additionally challenges several findings related to the GAL and/or counsel for Child, as well as the June 2020 and May 2021 interim orders. Critically, we find these issues waived for deficiencies related to Father's brief as discussed *supra*. Notwithstanding, while the court **may** appoint counsel for a child pursuant to Pa.R.Civ.P. 1915.11(a), this is discretionary, and the apportionment of reasonable costs is left to the court. *See* Pa.R.Civ.P. 1915.11(a). To the extent Father raises 23 Pa.C.S. § 2313(a) as support requiring the appointment of legal counsel, Father is conflating custody under the Custody Act with termination of parental rights under the Adoption Act, 23 Pa.C.S. §§ 2101-2938. Further, as expressed by the trial court, Father initially requested and utilized the GAL once appointed, and any problem with the GAL appears to be rooted in Father's disagreement with her opinion. Trial Ct. Op., 12/30/21, at 8. Moreover, as to the interim orders, because the trial court subsequently entered the final custody order subject of this appeal in November 2021, we would find any challenge thereto moot. *See E.B. v. D.B.*, 209 A.3d 451, 461 (Pa. Super. 2019) (holding that the provisions of an interim custody order have been rendered moot by the issuance of the final custody order).

To the extent Father makes a claim regarding the failure to address the Section 5337(h) relocation factors, the instant matter does not require separate, distinct consideration of the relocation factors. ***See D.K. v. S.P.K.***, 102 A.3d 467, 477-78 (Pa. Super. 2014) (stating, "[A] custody case where neither parent is seeking to relocate and only the children would be moving to a significantly distant location if custody shifted from one parent to another does not *per se* trigger [S]ection 5337 of the Child Custody Act."). Rather, any relevant relocation factor not already incorporated by the court's consideration of the custody factors may be addressed under Section 5328(a)(16). ***Id.*** Further, any argument concerning any agreement between the parties prior to the court's August 2017 custody order would be irrelevant.[12]

Turning to the finding of contempt, when reviewing an order of civil contempt,

> we are limited to determining whether the trial court committed a clear abuse of discretion. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt. This Court also has stated that each court is the exclusive judge of contempts against its process.

---

[12] The trial court declined to address this issue as not properly before it since it had been "litigated, appealed, and decided." Trial Ct. Op., 12/30/21, at 4.

- 23 -

***G.A. v. D.L.***, 72 A.3d 264, 269 (Pa. Super. 2013) (internal citation and quotations omitted); ***see also Harcar v. Harcar***, 982 A.2d 1230, 1234 (Pa. Super. 2009). We previously determined:

> A court may exercise its civil contempt power to enforce compliance with its orders for the benefit of the party in whose favor the order runs but not to inflict punishment. A party must have violated a court order to be found in civil contempt. The complaining party has the burden of proving by a preponderance of evidence that a party violated a court order.

***Garr v. Peters***, 773 A.2d 183, 189 (Pa. Super. 2001) (internal citation omitted).

As to the refusal of a party to comply with a custody order, 23 Pa.C.S. § 5323(g) provides, in relevant part:

> **Contempt for noncompliance with any custody order.--**
>
> (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
>
> > (i) Imprisonment for a period of not more than six months.
> >
> > (ii) A fine of not more than $500.
> >
> > (iii) Probation for a period of not more than six months.
> >
> > (iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
> >
> > (v) Counsel fees and costs.

23 Pa.C.S. § 5323(g).

To sustain a finding of civil contempt, the complainant must prove certain distinct elements by a preponderance of the evidence: "(1) that the

contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." ***Habjan v. Habjan***, 73 A.3d 630, 637 (Pa. Super. 2013) (citation omitted). Only willful noncompliance, not "a mere showing of noncompliance[,]" will satisfy this burden, which rests upon the complaining party. ***Id.***

Father takes issue that any failure to return Child was not willful. He asserts that the August 2017 order was not definite, clear, and specific. He states, "The wording of the custody order . . . does not, with specificity, place the burden of ensuring [Child]'s return to Pittsburgh on anyone." Father's Brief at 45. Father further places the responsibility for the Child's failure to return on Child. ***Id.*** at 44-46. Father asserts, "[A]ll the evidence points to [Child]'s own refusal to return." ***Id.*** at 44. Moreover, Father contends that Mother waived any opposition with her deference to his request to place Child in a language class for a week. ***Id.*** at 50-51. He then proceeds to blame the German officials for enrolling the Child in a sixth-grade class. ***Id.***

In support of its determination finding Father in contempt for failure to return Child from Germany, the trial court explained:

> I found Father in contempt of my 2017 Custody Order because he did not return the Child to Pittsburgh when he was ordered to do so. I found his failure to return the Child to be willful. . . .
>
> The [August] 2, 2017 Order states that Father's summer custody in Germany ends the week before school is to resume in Pittsburgh. At trial, Father made the wholly disingenuous argument that the Order did not "specifically direct any party to

- 25 -

return the Child such that the Court's Order was not definite, clear and specific."

Father was the only party in Germany who had custody of Child and the only party who could conceivably be directed to return Child. Father is a native English speaker and an educated person. His argument that he did not understand that it was he who was to return the Child is utterly implausible.

At trial, Father stated the order was not clear because "there is a difference in saying that he must return the child or that the child must be returned." Father's claim that this Order could be read in a fashion wherein he would not be the person directed to return the Child in his custody is meritless. My Order was clear. Father did not follow it. Moreover, Mother obtained a second Order on August 29, 2019 in which I directed Father to return the Child within 7 days. He did not. Child was not returned until the following January when Father accompanied him on the flight from Germany after having been threatened with jail time by the German courts. Father apparently found that German Order to be sufficiently precise.

Likewise, Father insists that his retention of Child in Germany was not willful because it was actually the Child who did not want to return. Father introduced evidence that he took Child to the airport but testified Child would not leave with Mother. To bolster his position, Father presented the testimony of witnesses that Father took with him and Child to the airport in Germany when Child was to return. Those witnesses testified that Child did not want to go with Mother, who had flown to Germany to retrieve him when Father failed to follow my Orders.

While I do not question the motives of Father's witnesses, who appeared to have genuine affection for Child, I do question Father's motives for taking "silent witnesses" with him to the airport. The only reason to do so, in my estimation, is because Father already knew that he was not going to cause the Child to depart with Mother. I found that Father took the witnesses specifically so that he could then call them as witnesses at a hearing he knew would eventually take place. There is no other feasible reason to take along witnesses to watch a child get on an airplane. I simply do not believe Father's testimony that he genuinely encouraged his son to go home. In fact, some of the reasons Child has stated for wanting to return to Germany - fear of gun violence and opioids – are mirrors of Father's statements.

Father essentially claims that his withholding of the Child is not his fault but that it is Child's fault for not wanting to go. My Order directs the parents' behavior, and it is the parents who are expected to follow the Order's provisions. Exchanges in custody cases are difficult for children and in this case even more so due to its international posture. It is the parents who are charged with effectuating those transfers; it is not the children's burden.

Trial Ct. Op., 12/29/21, at 5-6 (paragraph break inserted and citation to the record omitted).

Further, in also finding Father in contempt for enrollment of Child in school in Germany, the trial court stated:

I also found Father in contempt for enrolling Child in school in Germany, when it is Mother who has sole legal custody as to educational decisions. In his [Rule] 1925(b) Statement, and at trial, Father asserts that Mother "expressly waived the right to make the decision for the Child to attend the DE[13] school.

Father testified that he asked Mother if he could enroll Child in a German 'language' class "for a week" to improve his language skills. As both parties may enroll the Child in activities which do not infringe on the other parent's exercise of custody, Mother answered that Father could do as he wished during his time. What Father did, in fact, was to register the Child as a student at a secondary school. Father's long, convoluted explanation of his actions defied credibility. He first testified that the enrollment was just for language skills, then that it was necessary to avoid being charged with truancy, then that it was the school which had suggested it, as if he had no role in it occurring. In describing the pressure being put on him by the German authorities to register the Child for school since he was living in Berlin, Father expected this Court to accept that it somehow never occurred to Father to demonstrate, or even mention, to those authorities that the Child was just visiting for the summer.

---

[13] Father clarified, "DE stands for Deutschland, Germany." N.T., 2/1/21, at 108.

I found Father's testimony not credible. Father himself, when pressed, stated that he asked Mother only if he could put Child in a weeklong class, then admitted that Child was placed in a year-long curriculum. He also admitted that he never told Mother that the authorities were demanding or directing it, which would have alerted her that this was no week-long language refresher.

Father's request that Mother agree to Child's enrollment in a German school was a subterfuge. His instant argument, boiled down to its basics, is that since Mother fell for his lie, he cannot now be held in contempt for the actions he took arising from that deception. Father is incorrect. My finding of contempt is supported by the evidence and should be affirmed

*Id.* at 6-7 (paragraph break inserted and citations to the record and footnote omitted).

With this, we agree. For the reasons stated by the trial court, Father's challenge to the finding of contempt is without merit. To the extent that Father maintains that the trial court was treating the matter as criminal contempt rather civil contempt, this argument is without merit. The record fails to support the court's use of contempt punitively. Rather, any mention of incarceration was merely in relation to the court informing Father as to the contempt sanctions provided under the Act. N.T., 2/1/21, at 145-46; N.T., 7/12/21, at 75-76. Further, to the extent Father claims that the trial court raised the class enrollment *sua sponte*, Father failed to assert an objection on the record. Rather, he acquiesced to the court proceeding with this aspect of the contempt determination. N.T., 2/1/21, at 18-19, 26; N.T., 7/12/21, at 84 ("I thought the contempt was with regard to these two issues about failure to return in 2019 and his enrollment in school."). As such, this is waived. ***See*** Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court);

*Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa. Super. 1995) (stating, "[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.") (citations omitted); *see also Bednarek v. Velazquez*, 830 A.2d 1267, 1270 (Pa. Super. 2003).

Next, as to the relevant modification and contempt proceedings, Father raises several procedural issues related to the conduct of the trial, which we deem as due process complaints. He specifically asserts that the trial court restricted him in making argument and note taking, as well as the failure of the court to ask his prepared questions of Child.[14] Father's Brief at 69, 80-81, 84-85.

As to due process, "Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re J.N.F.*, 887 A.2d 775, 781 (Pa. Super. 2005). "Due process is flexible and calls for such

---

[14] As to his argument regarding questions of Child, Father's discussion is devoid of any identification where in the record he raised the issue in question before the trial court. *See* Pa.R.A.P. 2119(e). Regardless, we observe, the court stated, "I'm looking at those questions and I'll incorporate ones that I thought were appropriate." N.T., 7/12/21, at 5.

procedural protections as the situation demands." ***In re Adoption of Dale A., II***, 683 A.2d 297, 300 (Pa. Super. 1996) *citing **Mathews v. Eldridge***, 424 U.S. 319, 334, (1976).

> As stated by the trial court:
>
> Father lists a host of miscellaneous complaints. He complains that I did not allow him to take notes. This is not true. I did not allow him to stop and delay the proceedings to prepare his rebuttal. . . . He complains that I did not allow him to make legal argument. To the contrary, I merely prevented Father from continuing his rambling orations on what he incorrectly believed the law to be or what he incorrectly believed my role to be when we had a trial to conduct.

Trial Ct. Op., 12/30/21, at 10-11.

Instantly, as to the February, July, and October hearings in question, Father was afforded an opportunity to be heard. It is apparent that Father and the trial court judge vociferously disagreed over certain evidentiary issues, which may have been exacerbated by the remote nature of the hearings. However, as Father participated in the hearings and had the opportunity to present, and did present, evidence, and cross-examined witnesses, Father's arguments fail.

Finally, Father also raises a challenge with respect to recusal, asserting bias on the part of the trial judge.[15] Father's Brief at 89-95. We note that Father has pursued arguments related to bias and recusal repeatedly

---

[15] Father similarly makes reference to bias with regard to the trial court's interview of Child, as well as the assignment of costs of the GAL. Father's Brief at 68-69, 87.

throughout this litigation, including on appeal. *See O.B. v. C.W.B.*, 1253 WDA 2017 (Pa. Super. April 20, 2018) (unpub. memo. at 13, 27-28) (argument that court's decision the product of bias and ill-will without merit); *O.B. v. C.W.B.*, 49 WDA 2019 (dismissed due to Father's failure to pay for transcripts); *O.B. v. C.W.B.*, 878 WDA 2019 (quashed as interlocutory); *O.B. v. C.W.B.*, 190 WDA 2020 (dismissed based upon Father's failure to file a docketing statement); *O.B. v. C.W.B.*, 552 WDA 2020 (quashed as taken from an unappealable order); *O.B.*, 1677 WDA 2019, at 14-15 (recusal not addressed as interlocutory).[16] Father, however, fails to clearly set forth with his argument in his brief exactly when and how he raised this issue before the trial court. *See* Pa.R.A.P. 2119(e). Likewise, he submits several pages of meandering complaints and fails to provide a discussion with citation to the relevant law and develop the issue in a manner allowing for meaningful review. *See also In re W.H.*, 25 A.3d 330, 339 n.3 (Pa. Super. 2011) (quoting *In re A.C.*, 991 A.2d 884, 897 (Pa. Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); *see also In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa. Super. 2017). We, therefore, find this issue waived.

Nevertheless, even if not waived, we would discern no abuse of discretion. *See Vargo v. Schwartz*, 940 A.2d 459, 471 (Pa. Super. 2007).

---

[16] The trial court recounts a prior appellate history related to recusal. *See* Trial Ct. Op., 12/30/21 at 3 n.5.

(recognizing an abuse of discretion standard with respect to recusal, and stating, "[W]e extend extreme deference to a trial court's decision not to recuse[.]"). Again, while apparent that Father and the trial court judge disagreed throughout this litigation, upon review, we find no evidence of bias, prejudice, or unfairness. *See In re L.V.*, 209 A.3d 399, 415 (Pa. Super. 2019) (citation omitted) ("In order to prevail on a motion for recusal, the party seeking recusal was required 'to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially.'"). As acknowledged by the trial court, "I think it is vital that Child maintain a relationship with Father, who is afforded generous custody terms in my Order, should he choose to exercise them." Trial Ct. Op., 12/30/21, at 9-10.

For the foregoing reasons, we affirm the trial court's orders.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/21/2022